UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARQUES DELONEY, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO. 2:21-cv-00892 |
| Plaintiff, | ) ) ) | JUDGE EDMUND A. SARGUS |
| vs. | ) ) ) | MAGISTRATE JUDGE CHELSEY M. VASCURA |
| SK FOOD GROUP, INC. | ) ) | **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND** |
| Defendant. | ) ) ) | **STIPULATION OF DISMISSAL WITH PREJUDICE** |

**I.  INTRODUCTION**

Representative Plaintiff Marques Deloney, on behalf of himself and the current Opt-In Plaintiffs (collectively "Plaintiffs") and Defendant SK Food Group, Inc. ("Defendant"), collectively ("the Parties") respectfully move this Honorable Court to approve the proposed Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as corresponding state wage-and-hour statutes. Plaintiff asserted that Defendant violated the FLSA by failing to pay its hourly, non-exempt employees, including Plaintiff, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 each workweek. Specifically, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and other similarly situated non-exempt production/manufacturing employees for work performed before and after their scheduled start and stop times: a) changing into and out of their personal protective equipment, including but not

limited to a smock, hairnet, beard guard, gloves, steel toe boots and/or safety glasses; b) getting their work assignments, washing their hands, and walking to their assigned area of the production floor; and/or c) performing their production work.

If approved by the Court, the Settlement will provide for the issuance of Individual Payments in accordance with the proposed schedule:

- Fourteen (14) days after the Court approves the Settlement, Defendant will provide to Rust Consulting (the "Third-Party Settlement Administrator") the Total Settlement Amount of Ninety-Five Thousand Dollars;

- Fourteen (14) days after the Court approves the Settlement, Plaintiff will provide the Third-Party Settlement Administrator the settlement allocation amounts, including the names, last known addresses, and Individual Payments of Plaintiffs ("class list");

- Seven (7) days after the Third-Party Settlement Administrator receives the Total Settlement Amount and the class list, the Third Party Settlement Administrator will mail the Individual Payments to Plaintiffs, the Representative Payment to Representative Plaintiff, and the attorneys' fees and expenses to the addresses on the class list provided.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and was reached on June 23, 2023.

The settlement documents submitted for approval or entry by the Court consist of the following:

    Exhibit 1:    Joint Stipulation of Settlement and Release

    Exhibit 2:    Individual Settlement Agreement and Release

    Exhibit 3:    Declaration of Lori M. Griffin

    Exhibit 4:    Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the principal

terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

I. **Factual and Procedural Background**

    A. **The Action**

On March 2, 2021, Representative Plaintiff Marques Deloney filed this Action as a result of Defendant's failure to pay Plaintiff and other similarly situated employees for all hours worked, including overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.03. (Doc. 1).

Specifically, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and other non-exempt manufacturing employees for work performed between their scheduled start and stop times, and were not paid for the following work performed before and after their scheduled start and stop times: a) changing into and out of their personal protective equipment, including but not limited to a smock, hairnet, beard guard, gloves, steel toe boots and/or safety glasses; b) getting their work assignments, washing their hands, and walking to their assigned area of the production floor; and/or c) performing their production work.

On May 19, 2021, Plaintiff filed a Motion for Conditional Certification (Doc. 15), which Defendant opposed on June 9, 2021. (Doc. 16).

On December 20, 2021, the Court granted Plaintiff's Motion and conditionally certified the following class of individuals: "all former and current non-exempt production/manufacturing employees." (Doc. 22).

On January 18, 2022, the Notice was mailed and emailed to 1,802 potential opt-in Plaintiffs. The Notice period closed on March 4, 2022.

On March 11, 2022, the Parties filed a Notice to the Court of Individuals Eligible for Text Notice and Unopposed Request to Send Text Notice. (Doc. 34).

On March 22, 2022, the Court granted Plaintiff's unopposed request to send a text version of the Notice to individuals who had both an undeliverable postal and electronic mail Notice. (Doc. 37).

On March 22, 2022, the Notice was texted to the 91 potential opt-in plaintiff who did not receive the mailed or emailed notice. The Notice period closed on April 18, 2022. In total, 60 individuals joined the case.

On July 12, 2022, July 15, 2022, July 21, 2022, July 25, 2022, and August 22, 2022, Defendant produced time and pay records for Plaintiff and the Opt-In Plaintiffs.

### B. Negotiation of the Settlement

Between March 2022 and June 2023, the Parties engaged in an extensive exchange of information which included the initial production of time and pay information relating to Plaintiff and the Opt-Ins, performing extensive calculations to determine the alleged damages of Plaintiffs, numerous telephone discussions regarding the calculation of damages and potential resolution, and numerous motions. (Ex. 3, at ¶ 26.)

The Parties engaged in substantial investigation and both formal and informal discovery prior to negotiating the Settlement. (*Id.* at ¶ 27.) Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (*Id.* at ¶ 28.) This investigation also included a complete analysis and calculation of Plaintiffs' damages. Counsel for the Parties engaged in numerous and lengthy discussions regarding the damage calculations, Plaintiffs' claims and Defendant's defenses. (*Id.* at ¶ 29.)

4

This included interviewing and obtaining declarations from numerous putative class members. (*Id.* at ¶ 30.)

The Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims. (*Id.* at ¶ 31.) This included a complete analysis and calculation of Representative Plaintiff's and Opt-In Party Plaintiff's overtime damages. (*Id.* at ¶ 32.)

The Parties engaged in extensive legal discussion, which included numerous and lengthy discussions between counsel for the Parties. (*Id.* at ¶ 33.)

Between January 2023 and June 2023, the Parties engaged in settlement negotiations, including the exchange of numerous letters and discussions between Counsel for the Parties detailing the Parties' legal and factual positions. (*Id.* at ¶ 34.)

On June 23, 2023, in an effort to reach a compromise and to avoid the expense and burden of litigation, the Parties reached an agreement to settle the lawsuit, on the terms set forth in the Settlement Agreement. (*Id.* at ¶ 36.)

C.  **The Settlement Terms**

If approved by the Court, the Settlement will cover Representative Plaintiff and the 59 Opt-In Party Plaintiffs ("Plaintiffs"). Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, and because the opt-ins already consented to Marques Deloney as the Representative Plaintiff and to be bound by any settlement and/or judgement in this case, no fairness hearing is required or requested by the Parties.[1]

---

[1] *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23

The Total Settlement Amount is Ninety-Five Thousand Dollars ($95,000.00) which is inclusive of (a) all of the Individual Settlement Payments to Plaintiffs; (b) the Service Award Payment as approved by the Court to Representative Plaintiff Deloney and (c) Plaintiffs' Counsel's attorneys' fees and expenses as approved by the Court. (Ex. 3, Griffin Declaration at ¶ 40.)

Thirty-Two Thousand Four Hundred Twelve Dollars and Nine Cents ($32,412.09) of the Total Settlement Amount will be divided into Individual Settlement Payments to the Plaintiffs. The Individual Payments were calculated proportionally based on each Plaintiff's alleged overtime damages during the Released Period. The Parties have agreed to a $150.00 minimum payment for any Opt-Ins that are owed less than $150.00, who are not owed any damages, or who worked outside the statutory period. The Individual payments are provided in Appendix 1 of the Settlement. (*Id.* at ¶ 41.)

One Thousand Dollars ($1,000.00) of the Total Settlement will be paid to Representative Plaintiff Deloney in addition to his individual payment for his services as Representative Plaintiff and in exchange for a general release of claims. (*Id.* at ¶ 49.) In addition, $55,000.00 will be paid to Plaintiffs' Counsel for attorneys' fees and $6,587.91 for expenses incurred and expected to be incurred in the action and administration of the settlement. (*Id.* at ¶ 50.) This fee award is reasonable in light of the benefit achieved for Plaintiffs and is significantly less than Plaintiffs' counsel's lodestar. (*Id.*)

In exchange, the Action will be dismissed, and the Plaintiffs will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action asserted

---

requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and corresponding state wage and hour statues for the Release Period.

## II. THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Lori M. Griffin, and as explained below, Court approval is warranted on all scores.

### A. The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute"), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

7

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Griffin, Declaration (*see* Exhibit 4), the standard supports approval of the Settlement.

        B.        **The Settlement Distributions Are Fair, Reasonable and Adequate**

As a part of the scrutiny that applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiffs.

Here, the seven-factor standard supports approval of the Settlement. The parties' counsel have extensive experience litigating FLSA claims and there is no fraud or collusion. (*See* Exhibit 4.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. While only little formal discovery has yet commenced, the Parties have engaged in substantial investigation and exchange of records prior to and during the negotiations, and the issues are well understood by both sides. (*Id*. at ¶¶ 26-33.) The outcome is uncertain for Plaintiffs, and the risks of continued litigation are evident for both sides. (*Id*. at ¶ 53.) The opinions of experienced counsel of the parties support the Settlement, as does the Representative Plaintiff. (*See* Exhibit 3.)

All Individual Payments were calculated proportionally on each Plaintiff's alleged overtime damages during the Released Period. (*Id*. at ¶ 42.)

Plaintiffs' counsel calculated the alleged overtime compensation owed by adding 12 minutes per shift worked to account for unpaid pre-shift work. Any additional overtime hours

8

worked were multiplied by one and one-half times Plaintiffs' average hourly rate. If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation. (*Id*. at ¶ 44.)

During the Calculation Period, based on the records provided by Defendant and as analyzed by Plaintiffs' Counsel, Representative Plaintiff and the Opt-In Plaintiffs were allegedly denied $27,374.03 in overtime compensation for an extra 11 minutes of pre-shift work per day, and $32,502.70 in overtime compensation for an extra 13 minutes of pre-shift work per day. (*Id*. at ¶ 45.)

Pursuant to the Settlement, Plaintiffs will receive approximately 12 additional minutes per day in overtime damages for pre-shift work, after the deduction of attorneys' fees and costs and the service award to Representative Plaintiff. (*Id*. at ¶ 46.)

  **C. Class Counsel's Fees and Expenses Are Proper and Reasonable**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The Sixth Circuit underscored that "an award of attorney fees … 'encourage[s] the vindication of congressionally identified policies and rights,'" and thus "we have 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *Fegley*, 19 F.3d at 1134-35, quoting *United Slate,* 732 F.2d at 502; *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir.1985). In *Fegley*, the Court upheld an award of $40,000.00 in fees even though the plaintiff recovered $7,680.00 in damages. *Id*. Courts outside the Sixth Circuit similarly do not place an undue emphasis on the amount of the plaintiff's recovery. *Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir.1994), citing *Posner v. The*

9

*Showroom, Inc.,* 762 F.2d 1010 (6th Cir.1985) (internal quotations omitted). See also *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir.1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Gonzalez v. Bustleton Services, Inc.*, 2010 U.S. Dist. LEXIS 85153 (E.D. Pa. Aug 10, 2010) (awarding $76,066 in fees and costs after FLSA trial in which plaintiffs recovered $18,496); *Albers v. Tri-State Implement, Inc.*, 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); *Fedotoff v. American Testing Co.*, Case No. CV-07-626871 (Cuyahoga County Court of Common Pleas) (awarding $192,856 in attorneys' fees and costs although the plaintiff recovered $18,924 in overtime); *Perrin v. John B. Webb & Associates, Inc.*, 2005 WL 2465022 (M.D. Fla. 2005) (awarding $7,446.00 in attorneys' fees and costs although the plaintiff recovered $270.00, and recognizing that "in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."); *Parks v. Eastwood Insurance Services, Inc.*, 2005 WL 6007833 (C.D. Cal. 2005) (awarding over $2 million in attorneys' fees and costs although the plaintiffs recovered $1.2 million); *Heder v. City of Two River*s, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Griffin v. Leaseway Deliveries, Inc.*, 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20); and *Holyfield v. F.P. Quinn & Co*., 1991 U.S. Dist. LEXIS 5293, *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney's fees for a judgment in the amount of $921.50).

Plaintiffs' Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Exhibit 3.). The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $6,587.91, which included $409.72 incurred for the filing fee and postage for serving the complaint; $4,731.24 for mailing the Notice to 1,802 potential opt-in plaintiffs; $371.25 for data entry; $500.00 in miscellaneous litigation expenses; and $575.00 for a public records search. (*Id.* at ¶ 56.) All expenses were incurred during the course of the litigation of this Action or will be incurred during the administration of the Notice to the Class of the Settlement. (*Id.* at ¶ 57.)

### III.  CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 4.

Respectfully submitted,

| | |
|---|---|
| /s/ Lori M. Griffin | /s/ Shawn J. Organ |
| Lori M. Griffin (0085241) | Shawn J. Organ (0042052) |
| Anthony J. Lazzaro (0077962) | Connor A. Organ |
| The Lazzaro Law Firm, LLC | Organ Law LLP |
| The Heritage Building, Ste. 250 | 1330 Dublin Road |
| 34555 Chagrin Blvd. | Columbus, OH 43215 |
| Moreland Hills, OH 44022 | Phone: 614-481-0900 |
| Phone: 216-696-5000 | Facsimile: 614-481-0904 |
| Facsimile: 216-696-7005 | sjorgan@organlegal.com |
| anthony@lazzarolawfirm.com | amerino@organlegal.com |
| | |
| Attorneys for Plaintiff | AND |
| | |
| | /s/ William C. Martucci |
| | William C. Martucci, DC #993778 |
| | 1800 K Street NW, Suite 1000 |
| | Washington, DC 20006 |
| | Telephone: (202) 639-5640 |
| | Facsimile: (202) 783-4211 |
| | Email:  wmartucci@shb.com |

Ashley N. Harrison, MO #66202
Charles Rosebrough, MO #71590
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 559-4095
Facsimile: (816) 421-5547
Email:  aharrison@shb.com

Attorneys for Defendant