UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARQUES DELONEY, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO. 2:21-cv-00892 |
| Plaintiff, | ) ) | JUDGE EDMUND A. SARGUS |
| vs. | ) ) ) | MAGISTRATE JUDGE CHELSEY M. VASCURA |
| SK FOOD GROUP, INC. | ) ) | **REVISED JOINT MOTION FOR APPROVAL OF SETTLEMENT** |
| Defendant. | ) ) ) | **AND STIPULATION OF DISMISSAL WITH PREJUDICE** |

## I.    INTRODUCTION

Representative Plaintiff Marques Deloney, on behalf of himself and the current Opt-In Plaintiffs (collectively "Plaintiffs") and Defendant SK Food Group, Inc. ("Defendant"), collectively ("the Parties") respectfully move this Honorable Court to approve the proposed Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as corresponding state wage-and-hour statutes.  Plaintiff asserted that Defendant violated the FLSA by failing to pay its hourly, non-exempt employees, including Plaintiff, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 each workweek.  Specifically, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and other similarly situated non-exempt production/manufacturing employees for work performed before and after their scheduled start and stop times: a) changing into and out of their personal protective equipment, including but not

limited to a smock, hairnet, beard guard, gloves, steel toe boots and/or safety glasses; b) getting their work assignments, washing their hands, and walking to their assigned area of the production floor; and/or c) performing their production work.

If approved by the Court, the Settlement will provide for the issuance of Individual Payments in accordance with the proposed schedule:

- Fourteen (14) days after the Court approves the Settlement, Defendant will provide to Rust Consulting (the "Third-Party Settlement Administrator") the Total Settlement Amount of Ninety-Five Thousand Dollars;

- Fourteen (14) days after the Court approves the Settlement, Plaintiff will provide the Third-Party Settlement Administrator the settlement allocation amounts, including the names, last known addresses, and Individual Payments of Plaintiffs ("class list");

- Seven (7) days after the Third-Party Settlement Administrator receives the Total Settlement Amount and the class list, the Third Party Settlement Administrator will mail the Individual Payments to Plaintiffs, the Representative Payment to Representative Plaintiff, and the attorneys' fees and expenses to the addresses on the class list provided.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and was reached on June 23, 2023.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit 1:     Joint Stipulation of Settlement and Release

Exhibit 2:     Individual Settlement Agreement and Release

Exhibit 3:     Declaration of Lori M. Griffin

Exhibit 4:     Declaration of Chastity L. Christy

Exhibit 5:     Declaration of Anthony J. Lazzaro

Exhibit 6:    Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II.    Factual and Procedural Background

### A.    The Action

On March 2, 2021, Representative Plaintiff Marques Deloney filed this Action as a result of Defendant's failure to pay Plaintiff and other similarly situated employees for all hours worked, including overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.03.  (Doc. 1).

Specifically, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and other non-exempt manufacturing employees for work performed between their scheduled start and stop times, and were not paid for the following work performed before and after their scheduled start and stop times: a) changing into and out of their personal protective equipment, including but not limited to a smock, hairnet, beard guard, gloves, steel toe boots and/or safety glasses; b) getting their work assignments, washing their hands, and walking to their assigned area of the production floor; and/or c) performing their production work.

On May 19, 2021, Plaintiff filed a Motion for Conditional Certification (Doc. 15), which Defendant opposed on June 9, 2021.  (Doc. 16).  On June 23, 2021, Plaintiff filed a Reply in Support.  (Doc. 17).

On September 9, 2021, Defendant noticed depositions for the existing Plaintiffs.

On December 20, 2021, the Court granted Plaintiff's Motion and conditionally certified

3

the following class of individuals: "all former and current non-exempt production/manufacturing employees." (Doc. 22).

On January 18, 2022, the Notice was mailed and emailed to 1,802 potential opt-in Plaintiffs. The Notice period closed on March 4, 2022.

On March 4, 2022, Defendant propounded discovery requests to all of the Plaintiffs and notices of depositions for four (4) of the Plaintiffs. (Doc. 32).

On March 11, 2022, the Parties filed a Notice to the Court of Individuals Eligible for Text Notice and Unopposed Request to Send Text Notice. (Doc. 34).

On March 18, 2022, the Parties filed a Supplement Notice to the Court of Individuals Eligible for Text Notice. (Doc. 38). On March 22, 2022, the Court granted Plaintiff's unopposed request to send a text version of the Notice to individuals who had both an undeliverable postal and electronic mail Notice. (Doc. 39).

On March 22, 2022, the Notice was texted to the 91 potential opt-in plaintiff who did not receive the mailed or emailed notice. The Notice period closed on April 18, 2022. In total, 60 individuals joined the case.

On July 12, 2022, Defendant produced employment records, including time and pay records for some of the Plaintiffs in PDF format. On July 15, 2022, Defendant produced employment records, including time and pay records for some of the Plaintiffs in PDF format. On July 21, 2022, Defendant produced employment records, including time and pay records for some of the Plaintiffs in PDF format. On July 25, 2022, Defendant produced employment records, including time and pay records for some of the Plaintiffs in PDF format. On August 22, 2022, Defendant produced employment records, including time and pay records for some of the Plaintiffs in PDF format. (Exhibit 3, Declaration of Lori M. Griffin, ¶ 27.)

An overwhelming amount of the records produced were individual PDF files. Meaning each document was its own separate file. (*Id.* at ¶ 28.) Plaintiffs' Counsel reviewed each file for relevance to the case as Defendant produced all the employment documents for each Plaintiff, including their time and payroll data. (*Id.*) Plaintiffs' Counsel also reviewed and reviewed against the opt-in list to ensure that Defendant produced the time and pay records for all of the Plaintiffs. (*Id.*)

All of the relevant data from the time and pay records had to be manually entered into Excel in order for Plaintiffs' counsel to perform the damage analysis. (*Id.* at ¶ 29.) In total, Defendant produced 12,988 pages of records that Plaintiffs' Counsel reviewed. (*Id.* at ¶ 30.)

On December 20, 2022, Defendant served deposition notices on 5 Plaintiffs. (*Id.* at ¶ 31.)

On January 9, 2023, Defendant produced the time records for Darrie Cooley, Jr. On January 10, 2023, Defendant produced employment records for Adkins and Rivera. On January 23, 2023, Defendant propounded its second set of discovery requests on all 60 Plaintiffs. (*Id.* at ¶ 32.)

On February 13, 2023, Plaintiff served his First Set of Discovery Requests to Defendant as well as a 30(b)(6) Notice of Deposition. (*Id.* at ¶ 33.)

**B.    Negotiation of the Settlement**

Between March 2022 and June 2023, the Parties engaged in an extensive exchange of information which included the production of time and pay information relating to Plaintiff and the Opt-Ins, performing extensive calculations to determine the alleged damages of Plaintiffs, numerous telephone discussions regarding the calculation of damages and potential resolution, and numerous court filings. (*Id.* at ¶ 36.)

The Parties engaged in substantial investigation and both formal and informal discovery

prior to negotiating the Settlement. (*Id.* at ¶ 37.) Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (*Id.* at ¶ 38.) This investigation also included a complete analysis and calculation of Plaintiffs' damages. Counsel for the Parties engaged in numerous and lengthy discussions regarding the damage calculations, Plaintiffs' claims and Defendant's defenses. (*Id.* at ¶ 39.) This included interviewing and obtaining declarations from numerous putative class members. (*Id.* at ¶ 40.)

The Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims. (*Id.* at ¶ 41.) This included a complete analysis and calculation of Representative Plaintiff's and Opt-In Party Plaintiff's overtime damages. (*Id.* at ¶ 42.) The Parties engaged in extensive legal discussion, which included numerous and lengthy discussions between counsel for the Parties. (*Id.* at ¶ 43.)

Between January 2023 and June 2023, the Parties engaged in settlement negotiations, including the exchange of numerous letters and discussions between Counsel for the Parties detailing the Parties' legal and factual positions. (*Id.* at ¶ 44.)

The Parties agree that bona fide disputes exist between the Parties, including whether Defendant violated the FLSA; whether Plaintiffs performed pre/post shift work that is compensable under the FLSA; whether the amount of time Plaintiffs alleged spent performing this pre/post shift work was *de minimis* and thus not compensable; whether Plaintiffs would be entitled to liquidated damages as Defendant claims it has a good faith defense, and whether Defendant acted willfully, thereby extending the statute of limitations for damages to three years. (*Id.* at ¶ 45). Plaintiffs alleged that they performed between 15 and 20 minutes compensable but unpaid worked per shift during the three-year limitations period. Defendant contends that they have not

6

violated the FLSA, Plaintiffs did not perform compensable pre/post shift work, any work that Plaintiffs performed pre/post-shift was de minimis and therefore not compensable under the FLSA. Defendant also contends that they have a good faith defense for any alleged FLSA violation and that they did not act willfully, entitling Plaintiffs to only 2-years of damages. (*Id.* at ¶ 46.)

On June 23, 2023, in an effort to reach a compromise and to avoid the expense and burden of litigation, the Parties reached an agreement to settle the lawsuit, on the terms set forth in the Settlement Agreement. (*Id.* at ¶ 46).

Counsel for the Parties are experienced in wage and hour litigation and are fully satisfied that the resolution and the terms and conditions of the settlement agreement are fair, reasonable, and adequate and that they agree-upon resolution of the bona fide disputes and the settlement agreement are in the Parties' best interests. See (Exhibits 3-5).

## C.    The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff and the 59 Opt-In Party Plaintiffs ("Plaintiffs"). Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, and because the opt-ins already consented to Marques Deloney as the Representative Plaintiff and to be bound by any settlement and/or judgement in this case, no fairness hearing is required or requested by the Parties.[1]

The Total Settlement Amount is Ninety-Five Thousand Dollars ($95,000.00) which is

---

[1] *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

inclusive of (a) all of the Individual Settlement Payments to Plaintiffs; (b) the Service Award Payment as approved by the Court to Representative Plaintiff Deloney and (c) Plaintiffs' Counsel's attorneys' fees and expenses as approved by the Court. (Ex. 3, Griffin Declaration at ¶ 51.)

Thirty-Two Thousand Four Hundred Twelve Dollars and Seventy-Nine Cents ($32,412.79) of the Total Settlement Amount will be divided into Individual Settlement Payments to the Plaintiffs. The Individual Payments were calculated proportionally based on each Plaintiff's alleged overtime damages during the Released Period. The Parties have agreed to a $150.00 minimum payment for any Opt-Ins that are owed less than $150.00, who are not owed any damages, or who worked outside the statutory period. The Individual Payments are provided in Appendix 1 of the Settlement. (*Id.* at ¶ 52.)

One Thousand Dollars ($1,000.00) of the Total Settlement will be paid to Representative Plaintiff Deloney in addition to his individual payment for his services as Representative Plaintiff and in exchange for a general release of claims. (*Id.* at ¶ 59.) In addition, $55,000.00 will be paid to Plaintiffs' Counsel for attorneys' fees and $6,587.21 for expenses incurred and expected to be incurred in the action and administration of the settlement. (*Id.* at ¶ 60.) This fee award is reasonable in light of the benefit achieved for Plaintiffs and is significantly less than Plaintiffs' counsel's lodestar. (*Id.*, Exhibit 4A, Declaration of Chastity Christy and Declaration of Anthony J. Lazzaro, Exhibit 5A).

In exchange, the Action will be dismissed, and the Plaintiffs will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and corresponding state wage and hour statues for the three-year Release

Period.

### III.     THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declarations of Lori M. Griffin, Anthony J. Lazzaro, and Chastity Christy and as explained below, Court approval is warranted on all scores.

#### A.     The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008), quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute"), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946). As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992).

Here, the seven-factor standard supports approval of the Settlement. The parties' counsel

have extensive experience litigating FLSA claims and there is no fraud or collusion. (*See* Exhibits 3-5.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. The Parties have engaged in substantial investigation and exchange of records prior to and during the negotiations, and the issues are well understood by both sides. Defendant produced 12,988 pages of PDF records representing Representative Plaintiff and the Opt-In Plaintiffs employment documents, including their time and pay records. (*Id*. at ¶¶ 27-30.) The outcome is uncertain for Plaintiffs, and the risks and costs of continued litigation are evident for both sides. (*Id*. at ¶ 50.) The opinions of experienced counsel of the parties support the Settlement, as does the Representative Plaintiff. (*See* Exhibits 3-5.)

All settlement negotiations were extensive, conducted fairly, at arm's-length, and only occurred after the exchange and rigorous analysis of the relevant case law, pay and time data, and a lengthy exhaustion of the Parties' legal and factual positions. *Moore v. Aerotek, Inc.,* No. 2:15-CV-2701, 2017 WL 2838148, at *3 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2:15-CV-2701, 2017 WL 3142403 (S.D. Ohio July 25, 2017)("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion.")

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny that applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008), citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiffs.

10

This Court has held that "[t]he recovery of 76.5% of the likely recovery of alleged unpaid overtime work is not just fair and reasonable, it is exceptional." *Myres v. Hopebridge, LLC,* No. 2:20-CV-5390, 2023 WL 2399056, at *5 (S.D. Ohio Feb. 21, 2023). This Court also noted that "[i]n the Sixth Circuit, the recovery in wage and hour cases is typically 7-11%." *Id.* citing *Yorba v. Barrington Sch., LLC*, No. 2:21-CV-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022). *See also*, *Smith v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022)(same); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)(same).

All Individual Payments were calculated proportionally on each Plaintiff's alleged overtime damages during the Released Period. (*Id*. at ¶ 53.) Any Opt-Ins that are owed less than $150.00, who are not owed any damages, or who worked outside the statutory period will receive a minimum payment of $150.00. (*Id*. at ¶ 52.)

Plaintiffs' counsel calculated the alleged overtime compensation owed by adding 12 minutes per shift worked to account for unpaid pre/post-shift work. Any additional overtime hours worked were multiplied by one and one-half times Plaintiffs' average hourly rate. If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation. (*Id*. at ¶ 54.)

During the three-year Calculation Period, based on the records provided by Defendant and as analyzed by Plaintiffs' Counsel, Representative Plaintiff and the Opt-In Plaintiffs were allegedly denied $27,374.03 in overtime compensation for an extra 11 minutes of pre/post-shift work per day; $29,928.14 in overtime compensation for an extra 12 minutes of pre/post-shift work per day; $32,502.70 in overtime compensation for an extra 13 minutes of pre/post-shift work per day; $37,654.12 in overtime compensation for an extra 15 minutes of pre/post-shift work per day; and

$50,678.42 in overtime compensation for an extra 20 minutes of pre/post-shift work per day.  (*Id.* at ¶ 55.)

Pursuant to the Settlement, Plaintiffs will receive approximately 12 (almost 13) additional minutes per day in overtime damages for pre-shift work, after the deduction of attorneys' fees and costs and the service award to Representative Plaintiff, which is 108.30% of the possible recovery for the three-year statutory period for an additional 12 minutes per day in overtime damages; 99.72% of the possible recovery for the three-year statutory period for an additional 13 minutes per day in overtime damages; 86.08% of the possible recovery for the three-year statutory period for an additional 15 minutes per day in overtime damages; and 63.96% of the possible recover for the three-year statutory period for an additional 20 minutes per day in overtime damages.  (*Id.* at ¶ 56.)

The recovery in this case is substantial, fair, and reasonable and overwhelming exceeds the standard in this Circuit for likely recovery as Plaintiffs are recovering 108.30% in unpaid overtime compensation, which includes the minimum payment for individuals that were not owed any additional overtime compensation, who were outside the statute of limitations or whose damages were below $150.00.  *See Myres v. Hopebridge, LLC,* No. 2:20-CV-5390, 2023 WL 2399056, at *5 (S.D. Ohio Feb. 21, 2023); *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 833 F. App'x. 430, 431 (6th Cir. 2021) (noting that 32% of alleged damages was a "substantial recovery"); *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *2-9 (N.D. Ohio Sept. 13, 2021) (Helmick, J.) (observing that a recovery of 42% of the alleged overtime damages is "substantial relief"); *Vigna v. Emery Federal Credit Union*, No. 1:15-cv-51 2016 WL 7034237, at *2 (S.D. Ohio Dec. 2, 2016) (Dlott, J.) (approval of FLSA settlement where individual payments represented 55% of wages alleged owed); *Ousley v. CG Consulting, LLC,* No. 2:23-CV-01435,

2023 WL 3470522, at *4 (S.D. Ohio May 16, 2023)(" Not only do the individual settlement awards overwhelmingly exceed the Court's standard in terms of likely recovery, each settlement award represents the maximum potential recovery. As such, there is no question that it is fair, reasonable, and equitable."); *Dillworth v. Case Farms Processing, Inc.,* No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)(approval of FLSA Rule 23 settlement where individual payments represented one-third of the claimed unpaid wages before deduction of attorneys' fees and expenses.); *Smith v. SAC Wireless, LLC,* No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022)("almost 81% of the alleged owed overtime wages on the three-year period or 182% of the alleged overtime wages over the two-year period."); *McKnight v. Erico Int'l Corp.,* 655 F. Supp. 3d 645, 667 (N.D. Ohio 2023)(" Plaintiffs stand to receive significant benefits. Members of Rule 23 Subclass 1 will receive approximately 32% to 53% of their alleged but disputed damages."); and *Clark v. Pizza Baker, Inc.,* No. 2:18-CV-157, 2022 WL 16554651, at *6 (S.D. Ohio Oct. 31, 2022)("Under the proposed approach, after subtracting other fees and costs requested, class members under the Precision Defendant agreement will receive about 29.9% of their alleged unpaid wages. This is in line with other decisions in the Sixth Circuit and would benefit the members of the class.").

This Honorable Court should approve the settlement as it is fair and reasonable as Plaintiffs will recover an additional 12 minutes per day of overtime compensation for the 3-year statutory period. Plaintiff's recovery is over 108.3% of the claimed damages at 12 minutes per day. If approved, Plaintiffs will recover 63.96% to 86.08% of the damages for minutes claimed in the Complaint (15 to 20 minutes per day), which is substantially higher than the standard of recovery in this District and Circuit. The Settlement is a fair and reasonable compromise over bona fide disputes of Defendant's FLSA liability.

C.       Plaintiffs' Counsels' Fees and Expenses Are Proper and Reasonable.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).

"Since the FLSA does not discuss what constitutes a reasonable attorney fee, determination of a reasonable fee must be reached through evaluation of a myriad of factors, all within the knowledge of trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees."  *Snide v. Disc. Drug Mart, Inc.,* No. 1:11 CV 00244, 2013 WL 6145130, at *4 (N.D. Ohio Nov. 21, 2013), quoting *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994).  The Sixth Circuit has held "that 'reasonable' fees in the FLSA context are those that are adequate to attract competent counsel, but which do not produce a windfall for the attorney."  *Dean v. F.P. Allega Concrete Const. Corp.,* 622 F. App'x 557, 561 (6th Cir. 2015), citing *Lavin v. Husted,* 764 F.3d 646, 649 (6th Cir. 2014); quoting *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999);

"When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis." *Est. of McConnell v. EUBA Corp.,* No. 3:18-CV-00355, 2021 WL 1966062, at *5 (S.D. Ohio May 17, 2021), citing *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007).  "First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach.  Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)." *Est. of McConnell v. EUBA Corp., No*. 3:18-CV-00355, 2021 WL 1966062, at *5 (S.D. Ohio May 17, 2021) (internal citations omitted.)

1.       The Lodestar Method Is Appropriate in The Instant Case.

The Supreme Court has established a "strong presumption" that the lodestar amount represents a "reasonable" fee in the context of a fee-shifting statute like the FLSA:

> The lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a strong presumption that the lodestar represents the reasonable fee, and have placed upon the fee applicant who seeks more than that the burden of showing that such an adjustment is necessary to the determination of a reasonable fee.

*Dean,* 622 F. App'x at 562, quoting *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Moreover, the Sixth Circuit has held, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Rembert v. A Plus Home Health Care Agency LLC,* 986 F.3d 613, 616 (6th Cir. 2021), quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010).

"To calculate the lodestar, the court first determines counsel's reasonable hourly rate(s) and the number of hours that counsel 'reasonably expended' on the case." *Rembert,* 986 F.3d at 616, quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). "Multiplying reasonable rates times reasonable hours yields the lodestar." *See Waldo*, 726 F.3d at 821. While a district court has some discretion regarding the reasonableness of the rates and hours, the court must "provide[] a clear and concise explanation of its reasons for the fee award." *Rembert,* 986 F.3d at 616, quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). A district court also must look to "other considerations that may lead the district court to adjust the fee upward or downward" — "the most critical factor" of which "is the degree of success obtained." *Dean*, 622 F. App'x at 559, citing *Hensley v. Eckerhart,* 461 U.S. 424, 434, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

"District Courts use the lodestar method in certain wage and hour cases involving relatively

small claims and therefore small amounts of damages in question and, as a result, counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Ousley,* 2023 WL 3470522, at *5, citing *Harsh v. Kalida Mfg., Inc.,* No. 3:18-CV-2239, 2021 WL 4145720 at *8 (N.D. Ohio Dec. 2, 2016). "[S]uch a result is still necessary because the remedial purpose of the FLSA is to help an employee recover their wages, however significant or small." *Id.  See also, Harsh v. Kalida Mfg., Inc.,* No. 3:18-CV-2239, 2021 WL 4145720, at *8 (N.D. Ohio Sept. 13, 2021) (same).

The Sixth Circuit reversed a district court's order that reduced an FLSA plaintiff's counsel's recovery to a percentage of the damages stating,

> The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to "attract competent counsel" to represent them.

*Rembert,* 986 F.3d at 617, citing *Geier*, 372 F.3d at 791.  The Sixth Circuit also cautioned courts from becoming "green-eye shade accountants" and "instead must content themselves with 'rough justice.'"  *Id.*  at 618.

The Parties request that this Honorable Court utilize the lodestar method as it represents a reasonable recovery for Plaintiffs' Counsel, and it is appropriate given the size of the damages and the amount of work performed by Plaintiffs' Counsel in this case.

### 2.    Plaintiffs' Counsels' Lodestar is Reasonable.

After the determination that the lodestar method in appropriate, the second step of the Court's analysis as to the reasonableness of the fee petition is to address the following factors:

16

""(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides." *Moore v. Aerotek, Inc.,* No. 2:15-CV-2701, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2:15-CV-2701, 2017 WL 3142403 (S.D. Ohio July 25, 2017)

### a) The value of the benefit to the Plaintiffs is immense.

As the Supreme Court tells us, a district court must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Dean,* 622 F. App'x at 559, quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. As stated *supra,* the percentage of Plaintiffs' recovery under the settlement is substantial compared to the standard recovery in the Sixth Circuit.

This Honorable Court should not place an undue emphasis on the dollar amount of the Plaintiffs' recovery as an award of attorney fees "encourages the vindication of congressionally identified policies and rights, *Ousley,* 2023 WL 3470522, at *4, quoting *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994). "It is not uncommon for fee awards to exceed the amount recovered by plaintiffs in lost wages." *Ousley,* 2023 WL 3470522, at *5, citing *Fegley,* 19 F.3d at 1130 (6th Cir. 1994) (awarding attorneys' fees that were more than five times the amount awarded to the plaintiff). Many courts in the Sixth Circuit, as well as the Southern District of Ohio have regularly granted attorneys' fees and costs in excess of the amount recovered to plaintiffs in FLSA cases: *Funk v. Airstream, Inc.*, No. 3:17-cv260, 2019 WL 4599816 (S.D. Ohio Sept. 23, 2019) (Rice, J.) (awarding $171,663.01 in attorneys' fees and costs where $21,338.00 was awarded to the FLSA

collective); *Brantingham v. Emergency Servs., Inc.*, No. 2:16-cv-1169, 2017 WL 5175866 (S.D. Ohio Nov. 8, 2017) (Deavers, M.J.) (awarding $35,586.97 in attorneys' fees and costs and $13,168.63 in damages to plaintiffs); *Ford v. Carnegie Mgmt. Servs., Inc.*, 2017 WL 4390294 (S.D. Ohio Oct. 3, 2017) (Jolson, M.J.) (awarding $89,606.74 in attorneys' fees and costs and $24,893.26 to the collective); *Jasper v. Home Health Connection, Inc.*, No. 2:16-cv-125, 2016 WL 8202768 (S.D. Ohio Oct. 14, 2016) (Jolson, M.J.) (awarding $63,000 in attorneys' fees and costs, and $35,000 in damages to plaintiffs); *Abdelkhaleq v. Precision Door of Akron*, No. 5:07 CV 3585, 2010 WL 395236 (N.D. Ohio Jan. 25, 2010) (awarding $30,470.10 in attorneys' fees and $3,948.96 in damages); *Smyers v. Ohio Mulch Supply, Inc., et al.*, No. 21-3008, 2021 WL 2774665, at *2 (6th Cir. July 1, 2021) (reversing trial court's reduction of agreed upon attorneys' fees amount in FLSA settlement after erroneously holding attorneys' fees awards in FLSA cases should not be a large percentage of the total settlement amount.); *Rembert,* 986 F.3d at 617.  (holding that "a district court abuses its discretion if it limits the fees awardable under the FLSA to a percentage of the plaintiff's recovery").

As stated *supra*, the percentage of Plaintiffs' recovery under the settlement is substantial compared to the standard recovery of unpaid wages in the Sixth Circuit.  The attorneys' fees requested are also reasonable in light of the benefit achieved for Plaintiffs. Indeed, as several of the Plaintiffs infrequently worked 40 or more hours per week and/or did not work many weeks during the three-year statutory period, their unpaid overtime damages are limited.  (Ex. 3, ¶52.) Nonetheless, Plaintiffs' counsel negotiated a settlement that will provide significant relief to all Plaintiffs without the attendant risks and delay of continued litigation and appeals.

This Honorable Court should approve the fee request.

> **b)** **The Complexity of the Litigation and Society's Stake in incentivizing FLSA attorneys Supports a Determination of**

## Reasonableness

The instant case is a complex FLSA matter regarding unpaid, compensable pre/post-shift work allegedly performed by Plaintiffs.  Several factual and legal issues are present including how long it took Plaintiffs to perform the pre/post-shift work; whether the time spent is compensable under the FLSA and Portal-to Portal Act; whether the time spent was *de minimis*; whether Defendant acted in good faith or instead committed a willful violation of the FLSA.  Defendant could have succeeded in decertifying the case or on summary judgment.  The settlement provides substantial relief to Plaintiffs promptly and efficiently, supporting a finding of reasonableness.

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

> c)      **The value of services on an hourly basis weighs in favor of reasonableness as Plaintiffs' counsel took this case on a contingency basis and has substantial experience in FLSA cases.**

The Lazzaro Law Firm has incurred the following amount of hours at the corresponding hourly rates of pay: Attorney Anthony J. Lazzaro, 15 hours, $500.00 per hour; Attorney Chastity Christy, 27 hours, $500.00 per hour; and Attorney Lori M. Griffin, 143 hours, $475.00 per hour. (*See also* Exhibits 3, 4, and 5.)  The identified hours do not include time that will be spent after approval, namely administering the settlement.  *See Est. of McConnell v. EUBA Corp.,* No. 3:18-CV-00355, 2021 WL 1966062, at *7 (S.D. Ohio May 17, 2021) ("The Court is aware that Class Counsel's work does not end at final approval. Class Counsel frequently spend additional time,

sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters.")

The attorneys' fees requested are reasonable in light of the substantial experience Plaintiff's Counsel has litigating class and collective actions, and the substantial number of hours of legal services they devoted to this case. (*See* Exhibits 3-5.).

The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $6,587.21, which included $409.72 incurred for the filing fee and postage for serving the complaint; $4,731.24 for mailing the Notice to 1,802 potential opt-in plaintiffs; $371.25 for data entry; $500.00 in miscellaneous litigation expenses; and $575.00 for a public records search. (*Id.* at ¶ 66.) All expenses were incurred during the course of the litigation of this Action or will be incurred during the administration of the Notice to the Class of the Settlement. (*Id.* at ¶ 67.)

In the instant matter, Plaintiffs' counsel undertook representation under a contingent-fee basis and invested a substantial amount of time and resources into this complex case. (Ex. 3, ¶ 57.) Had this case not settled, Plaintiffs' counsel would have vigorously litigated the case without any promise of success or compensation. (*Id*. at ¶ 63.) At every step of the litigation, Defendant could have succeeded. (*Id.*) Plaintiffs were at great risk for non-payment or a payment less than what they will receive in this matter if the settlement is approved. (*Id*. at ¶ 61-63.) This risk of non-payment or a reduced payment strongly supports the amount requested here. (*Id.*)

## IV.  CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 6.

Respectfully submitted,

/s/ Lori M. Griffin                      /s/ Shawn J. Organ
Lori M. Griffin (0085241)          Shawn J. Organ (0042052)
Anthony J. Lazzaro (0077962)     Connor A. Organ
The Lazzaro Law Firm, LLC        Organ Law LLP
The Heritage Building, Ste. 250    1330 Dublin Road
34555 Chagrin Blvd.              Columbus, OH 43215
Moreland Hills, OH 44022       Phone: 614-481-0900
Phone: 216-696-5000           Facsimile: 614-481-0904
Facsimile: 216-696-7005        sjorgan@organlegal.com
anthony@lazzarolawfirm.com     amerino@organlegal.com

Attorneys for Plaintiff           AND

                                  /s/ William C. Martucci
                                William C. Martucci, DC #993778
                                1800 K Street NW, Suite 1000
                                Washington, DC 20006
                                Telephone: (202) 639-5640
                                Facsimile: (202) 783-4211
                                Email: wmartucci@shb.com

                                Ashley N. Harrison, MO #66202
                                Charles Rosebrough, MO #71590
                                2555 Grand Boulevard
                                Kansas City, MO 64108
                                Telephone: (816) 559-4095
                                Facsimile: (816) 421-5547
                                Email: aharrison@shb.com

                                Attorneys for Defendant

21